UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
FORT MYERS DIVISION

RHONDA LYNN TIBBETTS,

      Plaintiff,

v.                          Case No.:  2:20-cv-872-SPC-MRM

COMMISSIONER OF SOCIAL
SECURITY,

      Defendant.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Rhonda Lynn Tibbetts filed a Complaint on November 2, 2020. (Doc. 1).  Plaintiff seeks judicial review of the final decision of the Commissioner of the Social Security Administration ("SSA") denying her claim for a period of disability and disability insurance benefits.  The Commissioner filed the transcript of the administrative proceedings (hereinafter referred to as "Tr." followed by the appropriate page number), and the parties filed a joint memorandum detailing their respective positions.  (Doc. 19).  For the reasons set forth herein, the Undersigned recommends that the decision of the Commissioner be **REVERSED AND REMANDED** pursuant to § 205(g) of the Social Security Act, 42 U.S.C. § 405(g).

## I.    Social Security Act Eligibility

The law defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a

continuous period of not less than twelve months.  42 U.S.C. §§ 416(i), 423(d)(1)(A), 1382c(a)(3)(A); 20 C.F.R. § 404.1505.  The impairment must be severe, making the claimant unable to do her previous work or any other substantial gainful activity that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3); 20 C.F.R. §§ 404.1505 - 404.1511.

## II.      Procedural History

Plaintiff applied for a period of disability and disability insurance benefits on May 24, 2018, alleging a disability onset date of February 1, 2014.  (Tr. at 19).[1] Subsequently, Plaintiff's alleged onset date was amended to October 17, 2017.  (*Id.*). Plaintiff's claim was initially denied on August 22, 2018, and again upon reconsideration on November 5, 2018.  (*Id.*).  On November 14, 2018, Plaintiff filed a written request for hearing, which was held before Administrative Law Judge ("ALJ") Mario Silva on January 30, 2020.  (*Id.* at 9, 40-74).  The ALJ issued an unfavorable decision on March 20, 2020.  (*Id.* at 19-31).  The Appeals Council subsequently denied Plaintiff's request for review on September 26, 2020.  (*Id.* at 1-3).  Plaintiff filed her Complaint in this Court on November 2, 2020.  (Doc. 1).  The case is ripe for review.

---

[1]  The SSA revised the rules regarding the evaluation of medical evidence and symptoms for claims filed on or after March 27, 2017.  *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844-01, 5844 (Jan. 18, 2017).  The new regulations apply in Plaintiff's case because Plaintiff filed her claim after March 27, 2017.

III.     **Summary of the Administrative Law Judge's Decision**

An ALJ must follow a five-step sequential evaluation process to determine whether a claimant has proven she is disabled.  *Packer v. Comm'r of Soc. Sec.*, 542 F. App'x 890, 891 (11th Cir. 2013) (citing *Jones v. Apfel*, 190 F.3d 1224, 1228 (11th Cir. 1999)).  An ALJ must determine whether the claimant:  (1) is performing substantial gainful activity; (2) has a severe impairment; (3) has a severe impairment that meets or equals an impairment specifically listed in 20 C.F.R. Part 404, Subpart P, Appendix 1; (4) can perform her past relevant work; and (5) can perform other work of the sort found in the national economy.  *Phillips v. Barnhart*, 357 F.3d 1232, 1237-40 (11th Cir. 2004).  The claimant has the burden of proof through step four and then the burden shifts to the Commissioner at step five.  *Hines-Sharp v. Comm'r of Soc. Sec.*, 511 F. App'x 913, 915 n.2 (11th Cir. 2013).

The ALJ determined that Plaintiff last met the insured status requirements of the Social Security Act on December 31, 2019.  (Tr. at 21).  At step one, the ALJ found Plaintiff had not engaged in substantial gainful activity since her first alleged onset date, February 1, 2014, through her date last insured, December 31, 2019.  (*Id.* at 22).  At step two, the ALJ found that Plaintiff has the following severe impairments:  "lumbar degenerative disc disease, cervical degenerative disc disease, left shoulder high grade partial-thickness rotator cuff tear status post arthroscopic rotator cuff repair, and obesity (20 [C.F.R. §] 404.1520(c))."  (*Id.*).  The ALJ, at step three, determined that Plaintiff "did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed

impairments in 20 [C.F.R.] Part 404, Subpart P, Appendix 1 (20 [C.F.R. §§]

404.1520(d), 404.1525, and 404.1526)." (*Id.* at 23).

At step four, the ALJ found that Plaintiff had the residual functional capacity

("RFC") to:

> perform light work as defined in 20 [C.F.R. §] 404.1567(b) except the claimant can never climb ladders, ropes, or scaffolds; can frequently climb ramps or stairs; can occasionally stoop, crouch, or crawl; can engage in frequent bilateral reaching overhead, forward, or to the side; frequent pushing or pulling; she can engage in frequent bilateral handling and fingering of objects; no exposure to extreme cold and heat as defined by the SCO; she is limited to no more than occasional exposure to no more than moderate levels of vibration as defined by the SCO and when noted by the DOT and the job requirements; occasional exposure to no more than moderate levels of environmental irritants such as fumes, odors, dusts, or gases; and no exposure to hazards including unprotected moving mechanical parts or to unprotected heights.

(*Id.* at 24). The ALJ also determined that Plaintiff "was capable of performing past

relevant work as a purchasing agent ([*Dictionary of Occupational Titles*,] DOT#

162.157-038, [1991 WL 647293,] light, SVP 7). This work does not require the

performance of work-related activities precluded by [Plaintiff's RFC] (20 [C.F.R. §]

404.1565)." (*Id.* at 31). Accordingly, the ALJ found that "[t]he claimant was not

under a disability, as defined in the Social Security Act, at any time from February 1,

2014, the alleged onset date, through December 31, 2019, the date last insured (20

[C.F.R. §] 404.1520(f))." (*Id.*).

IV.     **Standard of Review**

The scope of this Court's review is limited to determining whether the ALJ applied the correct legal standard, *McRoberts v. Bowen*, 841 F.2d 1077, 1080 (11th Cir. 1988), and whether the findings are supported by substantial evidence, *Richardson v. Perales*, 402 U.S. 389, 390 (1971). The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla—*i.e.*, the evidence must do more than merely create a suspicion of the existence of a fact and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th Cir. 1982); *Richardson*, 402 U.S. at 401).

Where the Commissioner's decision is supported by substantial evidence, the district court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that "the evidence preponderates against" the Commissioner's decision. *Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991); *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The district court must view the evidence as a whole, taking into account evidence favorable as well as unfavorable to the decision. *Foote*, 67 F.3d at 1560; *accord Lowery v. Sullivan*, 979 F.2d 835, 837 (11th Cir. 1992) (court must scrutinize the entire record to determine reasonableness of factual findings).

## V.      Analysis

On appeal, Plaintiff raises three issues.  As stated by the parties, the issues are:

1.      Whether remand is required because the ALJ failed to explain why limitations he found credible at step two of the sequential evaluation process were not accommodated in [Plaintiff's RFC];

2.      Whether remand is required because the ALJ failed to consider all of the evidence of record in evaluating [Plaintiff's] RFC; and

3.      Whether remand is required because the appointment of Andrew Saul as a single commissioner of SSA who is removable only for cause and serves a longer term than that of the president violates separation of powers and renders the decision in this case, offered by an ALJ whose authority derived solely from Mr. Saul, constitutionally defective.

(Doc. 19 at 14, 22, 37).  The Undersigned finds it appropriate to address the issues in a more logical order.  Accordingly, the Undersigned will first address the parties' third issue – whether 42 U.S.C. § 902(a)(3) is unconstitutional and necessitates a rehearing of Plaintiff's case.  Next, the Undersigned will consider the parties' first issue – whether the ALJ erred in his evaluation of Plaintiff's mental impairments at step four of the sequential evaluation.  Finally, the Undersigned will consider the parties' second issue – whether the ALJ erred in his assessments of Dr. Kandel's medical opinion and Plaintiff's subjective allegations.

For the reasons discussed below, the Undersigned finds that remand is required based on the parties' first issue because the ALJ erred in his evaluation of

Plaintiff's mental impairments at step four of the sequential evaluation.  None of the other issues raised require remand or a rehearing.

### A.      42 U.S.C. § 902(a)(3) Does Not Necessitate a Rehearing.

Removal of the Commissioner of Social Security is governed by 42 U.S.C. § 902(a)(3), (the "removal provision").  Under § 902(a)(3), the SSA's Commissioner is appointed to a six-year term and may not be removed from office by the President without a showing of cause.  *See* 42 U.S.C. § 902(a)(3).

Plaintiff argues that the § 902(a)(3) removal provision provides unconstitutional tenure protection to the Commissioner of the SSA, violates the separation of powers, and, therefore, the SSA's structure is constitutionally invalid.  (*See* Doc. 19 at 37-40 (citing 42 U.S.C. § 902(a)(3); *Seila L. LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020))).  To that end, Plaintiff impliedly asserts that Commissioner Andrew Saul was subject to the removal provision's allegedly unconstitutional tenure protection and, thus, any actions taken by him or pursuant to his authority were unconstitutional.  (*See id.* at 37-38).  For example, Plaintiff argues that, because Commissioner Saul delegated his authority to the ALJ who issued a decision in her case, her claim was adjudicated by an ALJ who "had no lawful authority to do so."  (*See id.* at 38, 40 (citations omitted)).  She also asserts that her claim was decided under "a presumptively inaccurate legal standard" because Commissioner Saul issued regulations under which Plaintiff's application was decided.  (*Id.*).  Thus, Plaintiff argues that she was deprived of a valid administrative

adjudicatory process and the "case should be remanded for a *de novo* hearing before a new ALJ." (*Id.* at 37, 40 (citation omitted)).

The Commissioner "*agree[s]* that 42 U.S.C. § 902(a)(3) violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause," (*id.* at 40 (emphasis added) (citing Constitutionality of the Commissioner of Social Security's Tenure Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))), but disagrees that the removal provision necessitates a remand of Plaintiff's case, (*id.* at 41 (citation omitted)). Specifically, the Commissioner contends that Plaintiff cannot show a nexus between 42 U.S.C. § 902(a)(3)'s removal provision and any alleged harm suffered by Plaintiff. (*See id.* at 42-48 (citing *Collins v. Yellen*, 141 S. Ct. 1761 (2021); *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018); *Decker Coal Co. v. Pehringer*, 8 F.4th 1123 (9th Cir. 2021))).

The Commissioner raises two arguments in support of this contention. First, the Commissioner argues that because ALJ Mario Silva served under a ratification of his appointment by former Acting Commissioner Nancy Berryhill, there was no connection between ALJ Silva's decision and the removal provision. (*See id.* at 43-45 (citations omitted)). Because Acting Commissioner Berryhill was not subject to any tenure protection under 42 U.S.C. § 902(a)(3), the Commissioner asserts that any potential nexus between the removal provision and the decision in Plaintiff's case was severed. (*See id.*). Second, even if Plaintiff's case were decided under the authority of a Commissioner subject to the removal provision, the Commissioner argues that Plaintiff "cannot show that the removal restriction 'inflict[ed]

compensable harm' on her."  (*Id.* at 45-48 (alteration in original) (citing *Collins*, 141 S. Ct. at 1789)).

The Commissioner next argues that Plaintiff's rehearing request should be denied under the harmless error doctrine, (*id.* at 49-50 (citations omitted)), the *de facto* officer doctrine, (*id.* at 50-51 (citations omitted)), the rule of necessity (*id.* at 52 (citations omitted)), and broad prudential considerations, (*id.* at 53-54 (citations omitted)).

Plaintiff has not addressed the Commissioner's arguments.  (*See* Doc. 19).

On June 29, 2020, in *Seila Law LLC v. Consumer Fin. Prot. Bureau*, 140 S. Ct. 2183 (2020), the United States Supreme Court held that a "for-cause" removal restriction on the President's executive power to remove the Consumer Financial Protection Bureau's ("CFPB") director violated constitutional separation of powers, but that the removal provision was severable such that the other provisions relating to the CFPB's structure and duties "remained fully operative without the offending tenure restriction."  *Seila L. LLC*, 140 S. Ct. at 2209 (citing *Free Enter. Fund v. Pub. Co. Acct. Oversight Bd.*, 561 U.S. 477, 509 (2010)).

Thereafter, on June 23, 2021, in *Collins v. Yellen*, 141 S. Ct. 1761 (2021), the United States Supreme Court held that the Federal Housing Finance Agency ("FHFA") director's statutory for-cause removal protection was similarly unconstitutional.  *Collins*, 141 S. Ct. at 1783.  The Court also distinguished the

unconstitutional removal provision in *Collins* from similar appointment provisions,

*see, e.g.*, *Lucia v. S.E.C.*, 138 S. Ct. 2044 (2018), noting that:

> All the officers who headed the FHFA during the time in question were properly *appointed*. Although the statute unconstitutionally limited the President's authority to *remove* the confirmed Directors, there was no constitutional defect in the statutorily prescribed method of appointment to that office. As a result, there is no reason to regard any of the actions taken by the FHFA [challenged on appeal] as void.

*Id.* at 1787 (emphasis in original). The Court did not, however, rule out the potential

that an unconstitutional removal provision could "inflict compensable harm." *Id.* at

1788-89. To that point, the *Collins* Court listed examples of how compensable harms

might be identified, stating:

> Suppose, for example, that the President had attempted to remove a Director but was prevented from doing so by a lower court decision holding that he did not have "cause" for removal. Or suppose that the President had made a public statement expressing displeasure with actions taken by a Director and had asserted that he would remove the Director if the statute did not stand in the way. In those situations, the statutory provision would clearly cause harm.

*Id.*

In this matter, the Commissioner agrees with Plaintiff that 42 U.S.C. §

902(a)(3) is unconstitutional because it violates the separation of powers. (Doc. 19 at

40 (citing Constitutionality of the Commissioner of Social Security's Tenure

Protection, 45 Op. O.L.C. ----, 2021 WL 2981542 (July 8, 2021))). However, despite

the parties' agreement, the Undersigned finds that the Court need not determine the

constitutionality of 42 U.S.C. § 902(a)(3)'s removal provision.  In short, even assuming *arguendo* that the removal provision is unconstitutional, it would not necessitate a rehearing of Plaintiff's claim because the provision is severable and there is no evidence to suggest a nexus between the removal provision and a compensable harm to Plaintiff.  Accordingly, the Undersigned assesses whether the removal provision necessitates a rehearing of Plaintiff's claim, assuming *arguendo* that the provision is unconstitutional.

Plaintiff essentially contends that the allegedly unconstitutional nature of section 902(a)(3) automatically voids the ALJ's decision in this case.  (*See* Doc. 19 at 37-40).  On the other hand, the Commissioner has raised a plethora of arguments, none of which Plaintiff has responded to, as to why Plaintiff's rehearing request should be denied.  (*See* Doc. 19 at 40-54).

Here, the Undersigned agrees with the Commissioner's arguments and finds a rehearing is not required based solely on the allegedly unconstitutional removal provision for two reasons:  (1) the removal provision is severable from the remainder of the Social Security Act; and (2) Plaintiff has failed to show how the allegedly unconstitutional removal provision harmed her.

The Court in *Seila Law* noted that "one section of a statute may be repugnant to the Constitution without rendering the whole act void."  *See Seila L. LLC*, 140 S. Ct. at 2208.  Based on this principle, the Undersigned is not persuaded by Plaintiff's broad argument that 42 U.S.C. § 902(a)(3)'s removal provision divests the Commissioner of all authority under the Social Security Act or renders *all* of the

11

Commissioner's actions "presumptively inaccurate." (*See* Doc. 19 at 37-40). Rather, like the offending provision in *Seila Law*, the Undersigned finds that 42 U.S.C. § 902(a)(3) can be severed from the remainder of the Act because the SSA can continue to fully function without the presence of the allegedly unconstitutional provision. *See Seila L. LLC*, 140 S. Ct. at 2209; *see also Michele T. v. Comm'r of Soc. Sec.*, No. 3:20-cv-06085-JRC, 2021 WL 5356721, at *3-6 (W.D. Wash. Nov. 17, 2021) (holding that remand based on the unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted based, in part, on its severability from the remainder of the Act). Thus, the Undersigned finds that remand for a rehearing on this issue is not warranted.

Moreover, while the *Collins* Court recognized the potential that an unconstitutional removal provision could "inflict compensable harm," Plaintiff here has not identified how the removal provision at issue caused her compensable harm. *See Collins*, 141 S. Ct. at 1788-89. The Undersigned has not found any evidence suggesting that there is a connection between the removal provision and any possible harm to Plaintiff. In addition, Plaintiff's claim was adjudicated by an ALJ whose tenure was ratified by former Acting Commissioner Berryhill. Because former Acting Commissioner Berryhill was not subject to 42 U.S.C. § 902(a)(3)'s tenure protection, any argument that a nexus exists between § 902(a)(3) and a compensable harm to Plaintiff is further strained.

Furthermore, while the United States Supreme Court has not addressed this issue directly, Justice Kagan postulated as to its outcome in *Collins*:

[T]he majority's approach should help protect agency decisions that would never have risen to the President's notice.  Consider the hundreds of thousands of decisions that the [SSA] makes each year.  The SSA has a single head with for-cause removal protection; so a betting person might wager that the agency's removal provision is next on the chopping block . . . [b]ut given the majority's remedial analysis, I doubt the mass of SSA decisions—which would not concern the President at all—would need to be undone.  That makes sense. . . .  When an agency decision would not capture a President's attention, his removal authority could not make a difference—and so no injunction should issue.

*See id.* at 1802 (Kagan, J., concurring).  Justice Kagan's reasoning supports the Undersigned's conclusion that there is no evidence in the instant case to suggest that a nexus exists between § 902(a)(3) and any compensable harm to Plaintiff.

For these reasons, even assuming *arguendo* that 42 U.S.C. § 902(a)(3)'s removal provision is unconstitutional, the Undersigned finds that the removal provision does not necessitate remand or a rehearing of Plaintiff's claim.  *See Seila L. LLC*, 140 S. Ct. 2183; *Collins*, 141 S. Ct. 1761; *see also Michele T.*, 2021 WL 5356721, at *3-6 (holding that remand based on the unconstitutional nature of 42 U.S.C. § 902(a)(3) is unwarranted); *Tracy Rhouma v. Comm'r of Soc. Sec.*, No. 4:20-cv-2823, 2021 WL 5882671, at *9-11 (N.D. Ohio Dec. 13, 2021) (same); *Ronnie Hutchens v. Comm'r of Soc. Sec.*, No. 1:20-cv-1124, 2021 WL 5834409, at *6-14 (M.D.N.C. Dec. 9, 2021) (same).

The Undersigned next addresses the parties' two remaining non-constitutional issues, finding that the first one requires remand.

**B.     The ALJ Failed to Assess Properly Plaintiff's Mental Impairments.**

Plaintiff argues that the ALJ erred by failing to assess properly Plaintiff's mental impairments at step four of the sequential evaluation process. (Doc. 19 at 14-20 (citations omitted)).  Specifically, Plaintiff asserts that the ALJ found that Plaintiff had mild limitations in three mental functioning areas:  (1) interacting with others; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing oneself.  (*Id.* at 15 (citing Tr. at 22-23)).  Plaintiff contends that, because the ALJ found these mild limitations at step two of the sequential analysis, he needed to assess Plaintiff's mental impairments at step four in the RFC determination.  (*See id.* at 16 (citations omitted)).  Plaintiff argues that the ALJ erred by failing to conduct the required step four analysis and incorporate mental limitations in the RFC.  (*Id.* at 15-16 (citing Tr. at 22-30)).  Moreover, Plaintiff asserts that this error was harmful because the ALJ found Plaintiff capable of performing her past relevant skilled work. (*See id.* at 16-20 (citations omitted)).

In response, the Commissioner contends that the ALJ did not err in his assessment of Plaintiff's mental impairments.  (*Id.* at 20-22).  To begin, the Commissioner asserts that the ALJ did not have to include the "mild" mental functioning limitations into the RFC because they were an assessment of the severity of Plaintiff's mental impairments, not an assessment of Plaintiff's RFC.  (*See id.* at 21).  Additionally, the Commissioner argues that the ALJ adequately considered Plaintiff's mental impairments in the RFC determination because the ALJ considered that:  (1) Plaintiff denied having anxiety; (2) the records showed normal

mental status examinations; (3) Plaintiff engaged in activities of daily living inconsistent with severe mental limitations; and (4) both state agency psychological consultants found that Plaintiff did not have severe mental impairments. (*Id.* at 22 (citing Tr. at 27, 30, 363, 491)). In sum, the Commissioner contends that Plaintiff "failed to prove that her mental condition affected her ability to work." (*Id.*).

A claimant's RFC reflects what the claimant can still do in a work setting despite her impairments. 20 C.F.R. § 404.1545(a). It consists of a claimant's "impairment(s), and any related symptoms, such as pain, [that] may cause physical and mental limitations that affect what [a claimant] can do in a work setting." 20 C.F.R. § 404.1545(a). An ALJ will "assess and make a finding about [the claimant's RFC] based on all the relevant medical and other evidence." 20 C.F.R. §§ 404.1520(e), 404.1545(a)(1), (3). Put differently, the ALJ must consider all of a claimant's medically determinable impairments, including those that are non-severe. 20 C.F.R. § 404.1545(a)(2); *Schink v. Comm'r of Soc. Sec.*, 935 F.3d 1245, 1268 (11th Cir. 2019). "The ALJ makes this determination by considering a claimant's physical, mental, and other abilities affected by the impairment." *Schink*, 935 F.3d at 1268 (citing 20 C.F.R. § 404.1545(b)-(d)). If a claimant has a limited ability to carry out certain mental actions, such limitations may reduce a claimant's ability to do work. *Id.* "If an ALJ fails to address the degree of impairment caused by the combination of physical and mental medical problems, the decision that the claimant is not disabled cannot be upheld." *Id.* at 1269 (citation omitted).

Here, at step two of the sequential evaluation, the ALJ found that Plaintiff's medically determinable mental impairment of anxiety was non-severe. (Tr. at 22). In reaching this conclusion, the ALJ noted that Plaintiff reported problems with memory loss, excessive stress, difficulty focusing while on medication, and problems with personal care. (*Id.* at 22-23 (citing Tr. at 218, 489, 925)). Considering these allegations in light of the conflicting evidence of record, the ALJ determined that Plaintiff experienced mild limitations in three of the "paragraph B" mental functioning areas: (1) interacting with others; (2) concentrating, persisting, or maintaining pace; and (3) adapting or managing oneself. (*Id.* at 22-23 (citations omitted)). Additionally, the ALJ stated that "[t]he limitations identified in the 'paragraph B' criteria are not a[n RFC] assessment but are used to rate the severity of mental impairments at steps [two] and [three] of the sequential evaluation process. The mental [RFC] assessment used at steps [four] and [five] . . . requires a more detailed assessment." (*Id.* at 23).

Before conducting the step four assessment, the ALJ found that Plaintiff possessed an RFC that included no mental work-related limitations. (*See id.* at 24).

At step four, the ALJ noted that "[d]uring a review of symptoms, the claimant denied back pain, neck pain, and anxiety." (*Id.* at 27 (citing Tr. at 438)). The ALJ also found the opinions of two state agency psychiatric consultants persuasive, noting that the consultants "did not find the claimant to have any severe impairments." (*Id.* at 30 (citing Tr. at 75-85, 87-100)). Moreover, the ALJ found the psychiatric consultants' opinions supported by Plaintiff's "generally . . . normal

mental status examinations," (*id.* (citing Tr. at 363, 491)), and consistent with treatment notes in which Plaintiff "denied having anxiety," (*id.* (citing Tr. at 359, 363, 430, 638)).  Further, the ALJ determined that Plaintiff could return to her past relevant work as a purchasing agent, which entails a specific vocational preparation ("SVP") of seven.  (DOT# 162.157-038, 1991 WL 647293).

Notably absent from the ALJ's step four RFC determination was any assessment of whether Plaintiff's mild mental functioning limitations, identified at step two by the ALJ, caused any work-related limitations in the RFC.  (*See id.* at 24-30).  Similarly absent from the ALJ's RFC determination was an assessment of the evidence that the ALJ identified as a basis to find the mild mental functioning limitations at step two—*i.e.*, that Plaintiff reported problems with memory loss, excessive stress, difficulty focusing while on medication, and problems with personal care.  (*See id.*; *see also* Tr. at 218, 489, 925).

While the ALJ did not have to find work-related limitations based on Plaintiff's mild mental functioning limitations in interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing herself, he was required to include an assessment of their potential impact in the RFC determination.  *See Schink*, 935 F.3d at 1269.  Because the ALJ failed to discuss whether Plaintiff's mild mental functioning limitations would cause limitations in Plaintiff's RFC that may preclude Plaintiff from performing her past relevant work, the Undersigned "cannot determine whether the ALJ followed the proper legal analysis regarding Plaintiff's mental impairments" and, therefore, finds that reversal

as to this issue is appropriate.  *Dulude v. Comm'r of Soc. Sec.*, No. 6:20-cv-890-DNF, 2021 WL 4026268, at *3-4 (M.D. Fla. Sept. 3, 2021) (citing *Schink*, 935 F.3d at 1269); *see also Thompson v. Comm'r of Soc. Sec.*, No. 8:19-cv-124-T-60JSS, 2020 WL 1067162, at *4 (M.D. Fla. Jan. 15, 2020), *report and recommendation adopted*, No. 8:19-cv-124-T-60JSS, 2020 WL 1065181 (M.D. Fla. Mar. 5, 2020) (finding that the ALJ failed to provide the reviewing court with sufficient reasoning to determine that the proper legal analysis had been conducted because the ALJ failed to sufficiently assess a plaintiff's non-severe mental impairments); *Mitchell v. Comm'r of Soc. Sec.*, No. 2:20-cv-236-NPM, 2021 WL 4305088, at *6 (M.D. Fla. Sept. 22, 2021) ("The ALJ did not discuss whether [the plaintiff's] mild limitations in all four areas of mental functioning also limited his RFC.  Even [if the ALJ implicitly] found no limitations in [the plaintiff's] work-related mental capacities, the Court cannot affirm because 'the ALJ's "failure . . . to provide the reviewing court with sufficient reasoning for determining that the proper legal analysis has been conducted mandates reversal" in its own right.'") (quoting *Schink*, 935 F.3d at 1269; *Keeton v. Dep't of Health & Hum. Servs.*, 21 F.3d 1064, 1066 (11th Cir. 1994)).

To the extent that the Commissioner argues that the ALJ adequately considered Plaintiff's mental impairments in the RFC determination, (*see* Doc. 19 at 22 (citing Tr. at 27, 30, 363, 491)), the Undersigned is not persuaded.  Rather, as discussed above, the Undersigned finds that the ALJ's step four assessment of the evidence on Plaintiff's mental impairments was perfunctory and insufficient.  (*See* Tr. at 27, 30).  To the extent that the Commissioner argues that the mental health

evidence of record fits with the ALJ's RFC finding, the Undersigned finds that the Commissioner is engaging in impermissible post-hoc rationalization.  *See Jasper v. Saul*, No. 8:19-cv-711-T-CPT, 2020 WL 5270671, at *5 (M.D. Fla. Sept. 4, 2020) (citing *Watkins v. Comm'r of Soc. Sec.*, 457 F. App'x 868, 872 (11th Cir. 2012)).  The ALJ's superficial step four consideration of the records in which Plaintiff denied anxiety and exhibited normal mental status examinations does not expunge the ALJ's error in disregarding Plaintiff's mild mental functioning limitations and the evidence that the ALJ used to make those findings at step two.  (Tr. at 22-23 (citing Tr. at 218, 489, 925); *see also* Tr. at 429, 434, 437, 504, 964).

Accordingly, the Undersigned recommends that the ALJ's decision be remanded as to this issue for further consideration of the effect of Plaintiff's mental impairments on her RFC.

Because the Undersigned finds that remand is required as to this issue, the Undersigned finds that it would be premature to address the remaining issue – whether the ALJ erred in his assessments of Dr. Kandel's medical opinion and Plaintiff's subjective allegations – because the issue may be impacted when the ALJ re-evaluates the evidence of record on remand.  Nevertheless, the Undersigned analyzes the remaining issue to benefit the presiding United States District Judge and the parties, in the event that the District Judge disagrees with the Undersigned's findings and recommendations above.

### C.   The ALJ Properly Assessed the Evidence of Record.

Plaintiff argues that the ALJ erred in his assessment of the evidence of record. Specifically, Plaintiff contends that the ALJ improperly assessed the evidence in (1) determining the persuasiveness of Dr. Kandel's opinion and (2) evaluating Plaintiff's activities of daily living and testimony.  (*See* Doc. 19 at 22-28 (citations omitted)).

#### 1.   The ALJ Properly Determined the Persuasiveness of Dr. Kandel's Opinion.

As to Dr. Kandel's opinion, Plaintiff asserts that the ALJ only considered evidence that supported his determination and "ignored the abnormalities Dr. Kandel reported in his treatment notes."  (*Id.* at 23).

To support her assertion, Plaintiff contends that the ALJ failed to assess properly the supportability of Dr. Kandel's opinion by ignoring Dr. Kandel's reports showing that Plaintiff:  (1) appeared "relatively uncomfortable with a lack of spontaneous and associated movements," (*id.* at 23 (citing Tr. at 927)); (2) exhibited "cervical muscle spasm[s] and restricted cervical range of motion," (*id.* (citing Tr. at 928, 1021)); (3) exhibited "pain on palpitation of the cervical muscles, knees, bilateral hip joints, and bilateral knee joints," (*id.* (citing Tr. at 928, 1022)); (4) exhibited "weakness in the C6 supplied muscles and L4, L5 supplied muscles," (*id.* (citing Tr. at 928, 1022)); (5) exhibited "stiff and slow and very guarded gait with pain on heel walking," (*id.* (citing Tr. at 928, 1022)); (6) exhibited "diminished sensation in the C6 and L4, L5 dermatomal distributions," (*id.* at 23-24 (citing Tr. at 929, 1022)); (7) exhibited "diminished reflexes in all four limbs," (*id.* at 24 (citing Tr.

at 1022)); and (8) exhibited "diminished range of motion of the lumbar spine with muscle spasm and pain," (*id.* (citing Tr. at 929, 1022)).

Similarly, Plaintiff contends that the ALJ failed to assess properly the consistency of Dr. Kandel's opinion by ignoring: (1) "whether [Plaintiff's] left shoulder impairment would have caused additional limitations during the period prior to and immediately following her shoulder surgery," (*id.* at 24-25 (citing Tr. at 30, 628-31, 633, 634, 638-39, 690-707, 711-14)); and (2) "whether [Plaintiff's] admittedly severe cervical impairment supported Dr. Kandel's opinion as to her limited ability to reach," (*id.* at 25 (citing Tr. at 22, 24, 30, 584, 1042, 1071)).

In sum, Plaintiff argues that "[t]he ALJ's rejection of the treating neurologist's opinion based on a review of only the evidence supporting his decision cannot stand, and remand is required for further consideration." (*Id.*).

In response, the Commissioner argues that the 2017 revised regulations apply to Plaintiff's case and, under them, the ALJ correctly analyzed and determined the persuasiveness of Dr. Kandel's opinion. (*Id.* at 29-37 (citations omitted)). Specifically, the Commissioner contends that the ALJ's persuasiveness determination is supported by substantial evidence because he appropriately found that Dr. Kandel's opinion was unsupported by evidence of Plaintiff's normal range of motion in major and minor joints, improvement in her shoulder after surgery, and ability to sit and drive for two and a half hours at a time. (*Id.* at 36). In sum, the Commissioner asserts that the ALJ correctly analyzed the evidence of record and his

determination of the persuasiveness of Dr. Kandel's opinion is supported by substantial evidence. (*Id.*).

As noted above, the Social Security Administration revised its regulations regarding the consideration of medical evidence, with those revisions applicable to all claims filed after March 27, 2017. *See* 82 Fed. Reg. 5844-01, 2017 WL 168819 (Jan. 18, 2017). Because Plaintiff filed her claim after March 27, 2017, the revised regulations apply. *See* 20 C.F.R. § 404.1520c. The regulations require that an ALJ apply the same factors in the consideration of opinions from all medical sources, rather than afford specific evidentiary weight to certain sources' opinions. 20 C.F.R. § 404.1520c(a).

In contrast, under Eleventh Circuit precedent, the "treating source rule" requires the ALJ to afford "[t]he opinion of a treating physician . . . substantial or considerable weight unless 'good cause' is shown to the contrary." *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)).

At present, a question remains as to whether the Social Security Administration's 2017 revised regulations override the Eleventh Circuit's treating source rule. *Compare Bevis v. Comm'r of Soc. Sec.*, No. 6:20-cv-579-LRH, 2021 WL 3418815, at *6 (M.D. Fla. Aug. 5, 2021) ("Given the absence of any binding or persuasive guidance from the Court of Appeals, the Court is not willing to go as far as the Commissioner suggests and find that cases applying the 'good cause' standard are no longer good law, particularly given that *Winschel* [*v. Comm'r of Soc. Sec.*, 631

F.3d 1176 (11th Cir. 2011)] remains binding Eleventh Circuit precedent."), *with Douglas v. Saul*, No. 4:20-cv-00822-CLM, 2021 WL 2188198, at *4 (N.D. Ala. May 28, 2021) ("[Based on the application of *Chevron* and *Brand X*,] the court will apply the 2017 regulations – not the treating physician rule – to the ALJ's evaluation of the opinion evidence."), *and Stemple v. Kijakazi*, No. 1:20-cv-485, 2021 WL 4060411, at *6 (N.D. Ohio Sept. 7, 2021) (collecting cases in support of the same proposition).

Here, Plaintiff fails to address whether the SSA's 2017 revised regulations apply to her claims. Similarly, Plaintiff fails to address the Commissioner's argument that the Social Security Administration's 2017 revised regulations invalidate the Eleventh Circuit's treating source rule. (*See* Doc. 19). Nonetheless, because the result remains the same under both standards in this case, the Court need not resolve the conflict.

First, under the revised regulations, as to each medical source, the ALJ must consider: (1) supportability; (2) consistency; (3) relationship with the claimant; (4) specialization; and (5) "other factors that tend to support or contradict a medical opinion or prior administrative medical finding." 20 C.F.R. § 404.1520c(c).

Supportability and consistency constitute the most important factors in any evaluation, and the ALJ must explain how those two factors are considered. *See* 20 C.F.R. § 404.1520c(b)(2). In assessing the supportability and consistency of a medical opinion, the regulations provide that the ALJ need only explain the consideration of these factors on a source-by-source basis – the regulations

themselves do not require the ALJ to explain the consideration of each opinion from the same source. 20 C.F.R. § 404.1520c(b)(1). The regulations state:

> [W]hen a medical source provides multiple medical opinion(s) or prior administrative medical finding(s), we will articulate how we considered the medical opinions or prior administrative medical findings from the medical source together in a single analysis using the factors listed in paragraphs (c)(1) through (c)(5) of this section, as appropriate. We are not required to articulate how we considered each medical opinion or prior administrative finding from one medical source individually.

20 C.F.R. § 404.1520c(b)(1).

Overall, supportability relates to the extent to which a medical source has articulated support for the medical source's own opinion, while consistency relates to the relationship between a medical source's opinion and other evidence within the record. *See* 20 C.F.R. § 404.1520c(c)(1)-(2). Put differently, the ALJ's analysis considers whether the medical source's opinion is (1) supported by the source's own records and (2) consistent with the other evidence of record. *See Cook v. Comm'r of Soc. Sec.*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565832, at *3 (M.D. Fla. Apr. 6, 2021), *report and recommendation adopted*, No. 6:20-cv-1197-RBD-DCI, 2021 WL 1565162 (M.D. Fla. Apr. 21, 2021).

Second, under Eleventh Circuit precedent, the ALJ must show "good cause" to discredit the opinion of a treating physician. *Phillips v. Barnhart*, 357 F.3d 1232, 1240 (11th Cir. 2004) (citing *Lewis v. Callahan*, 125 F.3d 1436, 1440 (11th Cir. 1997)). "Good cause exists when the: (1) treating physician's opinion was not bolstered by the evidence; (2) evidence supported a contrary finding; or (3) treating physician's

opinion was conclusory or inconsistent with the doctor's own medical records." *Winschel v. Comm'r of Soc. Sec.*, 631 F.3d 1176, 1179 (11th Cir. 2011) (quotations omitted) (citing *Phillips*, 357 F.3d at 1241). "The ALJ must clearly articulate the reasons for giving less weight to the opinion of a treating physician, and the failure to do so is reversible error." *Lewis*, 125 F.3d at 1440.

Here, Plaintiff challenges the ALJ's assessment of the persuasiveness of Dr. Kandel's opinion. (Doc. 19 at 23-25). To assess whether the ALJ's findings are supported by substantial evidence, the Undersigned reviews below (1) how the ALJ determined the persuasiveness of Dr. Kandel's opinion and (2) whether good cause exists to discredit the opinion.

In evaluating the persuasiveness of Dr. Kandel's opinion, the ALJ specifically noted that the opinion was unsupported by Dr. Kandel's prior treatment notes and inconsistent with other evidence in the record. (*See* Tr. at 30). Moreover, there is substantial evidence within the record to support the ALJ's determination. (*See id.* at 367, 427, 429-31, 487, 490, 498, 502, 505-08, 513, 520-22, 525, 586, 588, 626-31, 638-39, 896, 922, 928, 930, 939-40, 957-58, 962-70, 1010, 1015, 1018, 1021-22, 1034, 1039, 1042, 1066, 1070-71).

Dr. Kandel recommended that Plaintiff be: (1) prevented from engaging in "repetitive movements of the lumbar spine . . . [and] cervical spine," (*see, e.g.*, *id.* at 916-17); (2) prevented from engaging in "over head / over shoulder activities," (*see, e.g.*, *id.* at 920); (3) permitted to "change positions frequently," (*see, e.g.*, *id.* at 916-17); and (4) prevented from engaging in "heavy lifting, bending, or twisting," (*see, e.g.*, *id.*

at 916).  At step four, the ALJ found Dr. Kandel's opinion unpersuasive stating that, while he agreed Plaintiff could not engage in heavy lifting, he did not find Plaintiff "as limited as assessed with her[:  (1)] postural movements[; (2)] reaching ability[; or (3)] the need to change positions."  (*Id.* at 30).

As to the supportability of Dr. Kandel's opinion, the ALJ thoroughly analyzed the records from Plaintiff's November 2017, February, March, May, and October 2018, and November 2019 visits with Dr. Kandel.  (*See id.* at 25-29).

During his analysis of the November 2017 records, the ALJ noted that Plaintiff reported back pain, neck pain, left shoulder pain, and midthoracic pain.  (*Id.* at 25 (citing Tr. at 520-22)).  The ALJ also noted that Plaintiff informed Dr. Kandel that "her back pain had subsided about 6 to 8 weeks after her rhizotomy, and since that time, she had not experienced back pain . . . [and] her neck pain was doing very well."  (*Id.*).  Moreover, the ALJ considered Dr. Kandel's notations that Plaintiff exhibited tenderness, pain, and muscle spasms.  (*Id.* at 25-26 (citations omitted)).

While reviewing Dr. Kandel's February, March, May, and October 2018 records, the ALJ noted that Plaintiff still reported pain in her back and neck and also reported upper extremity numbness and tingling.  (*See id.* at 26-28 (citing Tr. at 487, 502, 505-08, 922, 928, 930)).  The ALJ again noted that Dr. Kandel's reports showed tenderness, pain, and muscle spasms, but that Plaintiff also reported that she still had relief from a May 2017 lumbar rhizotomy, was "remodeling her home and doing a lot of mopping, vacuuming, sweeping, lifting, bending, and twisting," and had

"adequate range of motion at major and minor joints."  (*See id.* (citing Tr. at 487, 502, 505-08, 922, 928, 930)).

The ALJ also assessed Dr. Kandel's November 2019 records and noted that Plaintiff still exhibited tenderness, pain, and muscles spasms, despite also reporting that she "receiv[ed] a lot of relief from an epidural injection at the right L4-5."  (*See id.* at 29 (citing Tr. at 1018, 1021-22)).

Additionally, the ALJ noted that Dr. Kandel's opinion that Plaintiff should avoid repetitive movement of the cervical and lumbar spine was not supported by Dr. Kandel's findings that Plaintiff exhibited "adequate range of motion at the major and minor joints" during "numerous examinations."  (*Id.* at 30 (citing Tr. at 490, 498, 513, 928)).

Moreover, to the extent that Plaintiff cites Dr. Kandel's records showing that Plaintiff exhibited symptoms supporting Dr. Kandel's opinion, (*see* Doc. 19 at 23-24 (citing Tr. at 927-28, 1021-22)), the Undersigned finds these records insufficient to show that the ALJ's finding is unsupported by substantial evidence.  Rather, as discussed above, the ALJ expressly considered the reports highlighted by Plaintiff in conducting his persuasiveness determination.  (*See* Tr. at 25-30 (citing Tr. at 487, 490, 498, 502, 505-08, 513, 520-22, 922, 928, 930, 1018, 1021-22)).  Additionally, to the extent that Plaintiff asserts that the findings expressly considered by the ALJ should be reconsidered, the Undersigned finds that Plaintiff essentially asks the Court to re-weigh the evidence.  The Undersigned will not decide the facts anew and conduct a comparison of the records and substitute an evaluation of those records in

place of the ALJ's appropriate determination.  *See Dyer v. Barnhart*, 395 F.3d 1206, 1212 (11th Cir. 2005).

Accordingly, based on the ALJ's thorough review and assessment of Dr. Kandel's records, the Undersigned finds that the ALJ sufficiently and properly considered the supportability of Dr. Kandel's opinion.

As to the consistency of Dr. Kandel's opinion, the Undersigned finds that the ALJ expressly considered the other evidence of record, including the evidence that Plaintiff contends the ALJ ignored.  (*See* Tr. at 26-30 (citing Tr. at 367, 427, 429-31, 487, 525, 586, 588, 626-31, 638-39, 896, 939-40, 957-58, 962-70, 1010, 1015, 1018, 1034, 1039, 1042, 1066, 1070-71)).  Specifically, the ALJ considered Plaintiff's treatments with Dr. Hussey, Dr. Goldberg, and Dr. Gerber, Plaintiff's therapy and rehabilitation, Plaintiff's improvement from injections, surgery, and medical branch blocks, Plaintiff's imaging results, and Plaintiff's reported activities of daily living. (*See id.* (citations omitted)).  Thus, given the ALJ's comprehensive assessment and summary of the other evidence of record related to Plaintiff's impairments and activities of daily living, the Undersigned finds that the ALJ sufficiently reviewed the record to determine the consistency of Dr. Kandel's opinion.  Additionally, upon an independent review of those records, the Undersigned finds that the ALJ's determination of the consistency of Dr. Kandel's opinion is supported by substantial evidence.  (*See id.*).

In sum, the Undersigned finds that the ALJ comprehensively analyzed the supportability and consistency of Dr. Kandel's opinion when determining its

persuasiveness as required by 20 C.F.R. § 404.1520c.  Additionally, the Undersigned finds that the ALJ's determination of the persuasiveness of Dr. Kandel's opinion is supported by substantial evidence within the record.  Further, even considering Dr. Kandel's status as a treating physician, the ALJ clearly articulated good cause for discrediting Dr. Kandel's opinion when the ALJ showed that the opinion was inconsistent with the other evidence of record and unsupported by a portion of Dr. Kandel's own medical records.  Plaintiff has not shown that the ALJ's finding on the persuasiveness of Dr. Kandel's opinion is not supported by substantial evidence.

Thus, the Undersigned finds that the ALJ's decision is due to be affirmed as to his determination of the persuasiveness of Dr. Kandel's opinion.

**2.   The ALJ Properly Considered Plaintiff's Subjective Symptom Allegations, Testimony, and Activities of Daily Living.**

As to Plaintiff's activities of daily living and testimony, Plaintiff asserts that the ALJ erred by "reject[ing Plaintiff's] complaints based on her ability to perform 'high functioning activities.'"  (Doc. 19 at 25-26 (citing Tr. at 29)).  In support, Plaintiff summarizes the evidence of record regarding her activities of daily living and asserts that the ALJ's description of them ignores and conflicts with relevant portions.  (*See id.* at 26-27 (citing Tr. at 29, 50, 56, 217-18, 220, 242-44, 562, 1026, 1028, 1062)).  In sum, Plaintiff argues that "[t]he ALJ's failure to consider [Plaintiff's] difficulties in sustaining activities and her need to rest for significant periods after engaging in minimal activities requires remand for further consideration."  (*Id.* at 27).

In response, the Commissioner contends that "[t]he ALJ properly considered Plaintiff's activities in evaluating her allegations of disabling symptoms and limitations." (*Id.* at 28 (citing Tr. at 21, 28)).

To establish disability based on testimony of pain and other symptoms, a plaintiff must satisfy two prongs of the following three-part test: "(1) evidence of an underlying medical condition; and (2) either (a) objective medical evidence confirming the severity of the alleged pain; or (b) that the objectively determined medical condition can reasonably be expected to give rise to the claimed pain." *Wilson v. Barnhart*, 284 F.3d 1219, 1225 (11th Cir. 2002) (citing *Holt v. Sullivan*, 921 F.3d 1221, 1223 (11th Cir. 1991)). After an ALJ has considered a plaintiff's complaints of pain, the ALJ may reject them as not credible, and that determination will be reviewed to determine whether it is based on substantial evidence. *Moreno v. Astrue*, 366 F. App'x 23, 28 (11th Cir. 2010) (citing *Marbury v. Sullivan*, 957 F.2d 837, 839 (11th Cir. 1992)). If an ALJ discredits the subjective testimony of a plaintiff, then he must "articulate explicit and adequate reasons for doing so. Failure to articulate the reasons for discrediting subjective testimony requires, as a matter of law, that the testimony be accepted as true." *Wilson*, 284 F.3d at 1225 (citations omitted). "A clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed by a reviewing court." *Foote*, 67 F.3d at 1562.

The factors an ALJ must consider in evaluating a plaintiff's subjective symptoms are: "(1) the claimant's daily activities; (2) the nature and intensity of pain

and other symptoms; (3) precipitating and aggravating factors; (4) effects of medications; (5) treatment or measures taken by the claimant for relief of symptoms; and other factors concerning functional limitations." *Moreno*, 366 F. App'x at 28 (citing 20 C.F.R. § 404.1529(c)(3)).

As an initial matter, while Eleventh Circuit precedent refers to the ALJ's subjective symptom evaluation as a "credibility finding," SSR 16-3p eliminates the use of the term "credibility" in the sub-regulatory policy.  SSR 16-3p, 81 Fed. Reg. 14166, 14171.  SSR 16-3p stresses that, when evaluating a claimant's symptoms, the adjudicator will "not assess an individual's overall character or truthfulness" but instead "focus on whether the evidence establishes a medically determinable impairment that could reasonably be expected to produce the individual's symptoms and given the adjudicator's evaluation of the individual's symptoms, whether the intensity and persistence of the symptoms limit the individual's ability to perform work-related activities."  *Id.*  SSR 16-3p clarifies that adjudicators will consider whether the "individual's statements about the intensity, persistence, and limiting effects of symptoms are consistent with the objective medical evidence and other evidence of record."  *Id.* at 14170.  In this case, the ALJ's opinion did not assess Plaintiff's "character or truthfulness," but rather, consistent with the two-step process for evaluating symptoms, it assessed Plaintiff's subjective complaints and alleged activities of daily living and found that they conflicted with the other evidence in the record.  (*See* Tr. at 29 (citations omitted)); *see also* SSR 16-3p, 81 Fed. Reg. 14166,

14170-71; *Hargress v. Soc. Sec. Admin., Comm'r*, 883 F.3d 1302, 1308 n.3 (11th Cir. 2018).[2]

The Undersigned finds that the ALJ's subjective symptom evaluation and determination about Plaintiff's capabilities to perform certain activities of daily living are supported by substantial evidence and the ALJ did not err by failing to analyze expressly every portion of Plaintiff's alleged activities of daily living.

Here, the ALJ found that Plaintiff's medically determinable impairments could reasonably be expected to cause Plaintiff's alleged symptoms, but her statements concerning intensity, persistence, and the limiting effects of those symptoms were not consistent with the longitudinal evidence of record.  (Tr. at 29 (citing Tr. at 242-44, 367, 487, 495, 525, 626, 896, 1010, 1015, 1018, 1034, 1039)).

The ALJ discussed Plaintiff's allegations of "extreme pain with walking and standing," but contrasted that testimony with Plaintiff's reports of "high functioning activities" such as remodeling her home.  (*Id.* at 29 (citing Tr. at 242-44, 495)).  The ALJ also considered Plaintiff's allegation that she experienced pain after sitting for thirty minutes but found it inconsistent with her testimony that she could drive two and a half hours before needing to stop at a rest area, walk around, stretch, and then

---

[2] "Social Security Rulings are agency rulings published under the Commissioner's authority and are binding on all components of the Administration." *Klawinski v. Comm'r of Soc. Sec.*, 391 F. App'x 772, 775 (11th Cir. 2010) (citing *Sullivan v. Zebley*, 493 U.S. 521, 531 n.9 (1990)).  While Social Security Rulings are not binding on the Court, they are still afforded "great respect and deference, if the underlying statute is unclear and the legislative history offers no guidance." *Id.* (citing *B. ex rel. B. v. Schweiker*, 643 F.2d 1069, 1071 (5th Cir. 1981)).

continue.  (*Id.* (citing Tr. at 52-54, 242-44)).  The ALJ also noted that Plaintiff

complained of "pain in her neck, right hip, lower back, [and] shoulder . . . [, which

caused] an inability to stand, sit, or walk for more than a short period."  (*See id.* at

25).  However, the ALJ also found that "[t]reatment notes show [that Plaintiff] has

had improvement from injections, lumbar rhizotomy, . . . medial branch blocks[,]

surgery[, and] physical therapy."  (*Id.* at 29 (citing Tr. at 367, 487, 525, 626, 896,

1010, 1015, 1018, 1034, 1039)).

The ALJ also completed an in-depth discussion and summary of Plaintiff's

medical records.  (*Id.* at 25-30).  After considering Plaintiff's subjective symptoms

and the associated medical evidence, the ALJ made a determination, supported by

substantial evidence, that Plaintiff could perform light work activity with additional

limitations, consistent with the RFC finding.  (*Id.* at 24, 30).  Accordingly, the

Undersigned finds that the ALJ's subjective symptom evaluation and determination

about Plaintiff's capabilities to perform certain activities of daily living is supported

by substantial evidence.

Moreover, the Undersigned is unpersuaded by Plaintiff's argument that the

ALJ ignored significant portions of the record on Plaintiff's alleged activities of daily

living and reported symptoms.  (*See* Doc. 19 at 25-27 (citations omitted)).  Rather,

the ALJ provided ample examples of inconsistencies within the record to account for

his rejection of Plaintiff's testimony on her activities of daily living and symptoms.

(Tr. at 29 (citing Tr. at 242-44, 367, 487, 495, 525, 626, 896, 1010, 1015, 1018, 1034,

1039)).  Moreover, Plaintiff cites multiple portions of the record that were expressly

cited and considered by the ALJ.  (*Compare* Doc. 19 at 25-27; *with* Tr. at 25, 29 (citing Tr. at 242-44)).

The Undersigned finds that Plaintiff's citations to portions of the record expressly considered by the ALJ do not bolster Plaintiff's argument that the ALJ's subjective symptom evaluation is unsupported by substantial evidence.  The subjective symptom evaluation is the province of the ALJ and the Undersigned declines to disturb it considering the substantial supporting evidence in the record cited by the ALJ.  *See Foote*, 67 F.3d at 1562.  Moreover, when the ALJ conducts the subjective symptom evaluation "there is no rigid requirement that the ALJ specifically refer to every piece of evidence in his decision, so long as the ALJ's decision enables the district court to conclude that the ALJ considered [the claimant's] medical condition as a whole."  *Adams v. Comm'r of Soc. Sec.*, 586 F. App'x 531, 533 (11th Cir. 2014) (quotations omitted).  To be sure, the ALJ was required to *consider* all of the evidence presented, including Plaintiff's own description of her daily activities, *see* 20 C.F.R. § 404.1529(c)(3), however, the ALJ was not required to expressly *discuss* it, *see Mahon v. Comm'r of Soc. Sec.*, No. 8:16-cv-1462-T-JSS, 2017 WL 3381714, at *10 (M.D. Fla. Aug. 7, 2017) (finding that the ALJ did not err by failing to discuss every piece of evidence in the context of a credibility assessment).  Here, upon reviewing the record, the Undersigned finds that the ALJ considered Plaintiff's activities of daily living and medical history treatment and appropriately found them inconsistent with Plaintiff's subjective complaints of pain and alleged activities of daily living limitations.  (*See* Tr. at 25, 29 (citations

omitted)).  Accordingly, the Undersigned finds that the ALJ's subjective symptom determination and assessment of Plaintiff's activities of daily living are supported by substantial evidence and the ALJ's decision is due to be affirmed as to this issue.

## VI.      Conclusion

Upon consideration of the parties' submissions and the administrative record, the Undersigned finds that the ALJ erred in his assessment of Plaintiff's mental impairments at step four of the sequential evaluation process.  Accordingly, the Undersigned **RESPECTFULLY RECOMMENDS** that:

1.   The decision of the Commissioner be **REVERSED AND REMANDED** pursuant to sentence four of 42 U.S.C. § 405(g).

2.   The Commissioner be instructed on remand to do the following:

     Re-evaluate Plaintiff's mental impairments and expressly analyze whether they impact Plaintiff's RFC.

3.   Plaintiff be instructed that any application for fees, costs, or expenses must comply with the Court's Standing Order on Management of Social Security Cases, *In re Administrative Orders of the Chief Judge*, Case No. 3:21-mc-1-TJC, Doc. 43 (Dec. 7, 2021).

4.   The Clerk of Court be directed to enter judgment accordingly, to terminate any pending motions and deadlines, and to close the case.

**RESPECTFULLY RECOMMENDED** in Chambers in Fort Myers, Florida on December 21, 2021.

Mac R. McCoy
United States Magistrate Judge

## NOTICE TO PARTIES

A party has fourteen days from this date to file written objections to the Report and Recommendation's factual findings and legal conclusions. A party's failure to file written objections waives that party's right to challenge on appeal any unobjected-to factual finding or legal conclusion the district judge adopts from the Report and Recommendation. *See* 11th Cir. R. 3-1.

Copies furnished to:

Counsel of Record
Unrepresented Parties